# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**JONATHON PEIRSOL,**<br><br>          **Debtor.** | **Bankruptcy Case<br>No. 19-40782-JDP** |
| **WAYNE KLEIN,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**JONATHON PEIRSOL,**<br><br>          **Defendant.** | **Adv. Proceeding<br>No. 20-8060-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

    Rhett Miller, PARSONS, SMITH, STONE, LOVELAND & SHIRLEY, Burley, Idaho, Attorney for Plaintiff.

    Matthew Bennett, FOLEY FREEMAN, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION–1

## I.  Introduction

There are two motions before the Court in this adversary proceeding, both filed by Wayne Klein ("Plaintiff").  The first is a motion for partial summary judgment, Dkt. No. 24; the other is a motion to extend time, Dkt. No. 34.  The Court heard oral argument on the motions, after which Plaintiff and Jonathon Peirsol ("Defendant") submitted additional briefing.  Dkt. Nos. 38–42.  During the hearing, the Court agreed to take judicial notice of the adversary docket and evidentiary exhibits in *Klein v. Peirsol (In re J & J Chemical)*, 18-8024-JDP ("Chemical Adv."; case docket referred to as "Chemical Adv. Dkt.").[1]  After considering the record, the submissions and the arguments of the parties, as well as applicable law, this decision disposes of the motions.  Fed. R. Bankr. P. 7052; 9014.[2]

## II.  Motion to Extend Time

As is its usual practice, after commencement of an adversary proceeding, the Court conducts a pretrial conference with counsel to set case management

---

[1] To be precise, the Court inquired at the hearing whether, in deciding these motions, the parties wished it to take judicial notice of the docket in that adversary proceedidng, and the parties agreed.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION–2

goals and deadlines to govern the action. In this proceeding, a pretrial conference was held on December 15, 2020, in which the parties participated. Dkt. Nos. 6, 9, 10. Following the conference, the Court issued its Pretrial Order in which it instructed, *inter alia*, that, "Any and all pretrial motions, including any motions for continuances, must be filed *and a hearing held before the Court* in accordance with the Bankruptcy Rules on or before May 14, 2021. Continuances will not be granted unless extraordinary cause is shown." Dkt. No. 10 (emphasis added).

Plaintiff filed the current motion for partial summary judgment on May 14, 2021. Dkt. No. 24. As such, the motion itself was timely under the terms of the Pretrial Order. However, Plaintiff obviously could not comply with the second requirement for motions under the Pretrial Order: that it be heard by this Court by that same date. When brought to his attention via Defendant's brief opposing the summary judgment motion, on July 1, 2021, Plaintiff filed the motion to extend the time in which to hold a motion hearing. Dkt. No. 34.

Pursuant to Rule 9006(b)(1), Plaintiff must demonstrate excusable neglect for the Court to grant an extension sought after the deadline. Whether to grant relief is a matter for the Court's discretion, and is an equitable question,

MEMORANDUM OF DECISION–3

dependent upon the circumstances presented. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 113 S. Ct. 1489, 1495, 123 L. Ed. 2d 74 (1993); Rule 9006(b)(1). In evaluating a claim of excusable neglect, the Court examines the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id*. at 395.

The Court determines that the standard for demonstrating excusable neglect has been satisfied here. First, the Court can perceive no appreciable prejudice to the Defendant by granting a brief extension to Plaintiff to conduct a hearing on the summary judgment motion. Plaintiff correctly points out that, one way or the other, these issues must be heard and decided. Certainly, if the record supports one, a summary judgment on some or all of the issues or claims is more expeditious and less expensive than resolving them with a trial. And even if the motion is denied, in actions like this one, its consideration will inform the Court about some of the issues presented in this contest and, potentially, allow the parties and Court to streamline the trial.

MEMORANDUM OF DECISION–4

In addition, the length of delay occasioned by an extension is minimal. The Court has the motion before it, and the delay is a matter of a few months. The impact on judicial proceedings is equally minimal, as a trial date had not yet been set, so consideration of this motion will not delay the trial.

To explain his delay in making the motion for summary judgment, Plaintiff contends he was waiting for Defendant to certify his deposition testimony. But Plaintiff's argument is somewhat disingenuous. It is clear from Plaintiff's affidavit that the depositions of both Plaintiff and Defendant were not scheduled to occur until April 15 and 16. Aff. of Rhett M. Miller, Dkt. No. 35. With a deadline of May 15—the date by which a pretrial motion was to be both filed *and* argued—Plaintiff should have appreciated that an extension of the deadline would be required given the notice and briefing requirements associated with a summary judgment motion. The Court intends that parties observe the case-processing deadlines it establishes in a pretrial order. A pretrial motions deadline is included in such orders not only for the benefit of parties and their counsel, but to ensure the adversary proceeding will advance expeditiously and efficiently toward conclusion. If a pretrial motion is filed or scheduled to be heard too close to the trial date, the Court may lack adequate

MEMORANDUM OF DECISION–5

time to render a proper decision and allow counsel a meaningful opportunity to

prepare for trial in light of that decision, which may necessitate a continued trial

date.  Moreover, if the motion proves dispositive on issues to be tried, then

unnecessary trial preparation may have already taken place, which is wasteful in

terms of both time and money.  Simply put, court-imposed deadlines serve

important roles in litigation and ought, in most instances, be observed.

Even so, the Court understands that other scheduling demands, and the

fact that deposition transcripts take some time to prepare, may constitute

credible reasons for delay.  While permission to exceed the deadline is

preferrable over forgiveness for failure to comply with it, and Plaintiff ought to

have sought an extension of the pretrial motion deadline in advance of its

expiration, nevertheless, the Court views the circumstances in this case as

evidence of poor planning rather than bad faith.  Since the Court finds little

prejudice has been visited upon Defendant by any delay, Plaintiff's motion to

extend time will be granted, and the Court will consider Plaintiffs' tardy

summary judgment motion.

///

///

MEMORANDUM OF DECISION–6

### III. *Motion for Partial Summary Judgment*

A.  Summary Judgment Standard

Summary judgment may be granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to judgment as a matter of law.  Civil Rule 56, incorporated by Rule 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).  In resolving a motion for summary judgment, this Court does not weigh the evidence; rather it determines only whether a material factual dispute remains for trial.  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).  An issue is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case.  *Far Out Prods*., 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving party bears the initial burden of showing there is no genuine issue of material fact.  *Martin v. Mowery (In re Mowery)*, 591 B.R. 1, 5 (Bankr. D. Idaho 2018) (citing *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597

(Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998))).

If the non-moving party bears the ultimate burden of proof on an element at trial,

however, the burden remains with that party to make a showing sufficient to

establish the existence of that element in order to survive a motion for summary

judgment. *Id*.

B. Undisputed Facts

The following undisputed facts are found in Plaintiff's Statement of

Undisputed Facts, Dkt. No. 27; the affidavit of R. Wayne Klein filed at Dkt. No.

25 ("Klein Aff."); the deposition of Jonathan Peirsol, Ex. B to the Klein Aff.

("Peirsol Depo."); as well as the adversary docket and evidentiary exhibits in the

Chemical Adv. case.

J & J Chemical, Inc. ("Chemical") was founded in 1998, and from

approximately 2002 until Chemical filed a bankruptcy petition in January 2017,

Defendant was the sole owner and shareholder of the company.  Peirsol Depo. at

pp. 16 ,17; Amended Answer ¶ 6.  On January 19, 2017, acting through

Defendant, Chemical filed a chapter 11 bankruptcy petition. *In re J & J Chemical*,

17-40037-JDP at Dkt. No. 1; Klein Aff. at ¶ 2.  On March 1, 2017, Defendant pled

guilty to a crime and was sentenced to a term of imprisonment.  This prompted

MEMORANDUM OF DECISION–8

the United States Trustee to seek appointment of a chapter 11 trustee to oversee administration of Chemical's bankruptcy case.  *Id.* at Dkt. No. 39.  The Court granted the motion and Mr. Klein[3] was appointed as the plan administrator in Chemical's bankruptcy case.  *Id.* at Dkt. Nos. 84, 89, 90; Klein Aff. at ¶ 3.

As part of his duties, Plaintiff commenced several adversary proceedings in Chemical's bankruptcy case.  One such proceeding was the Chemical Adv., filed on June 6, 2018.  Chemical Adv. Dkt. No. 1; Klein Aff. at ¶ 4.  The complaint in that action alleged that Defendant was the President of Chemical prior to the bankruptcy filing.  Chemical Adv. Dkt. No. 1 at ¶ 2.  The complaint further alleged that, in addition to running Chemical, Defendant was also personally engaged in providing tax preparation services to clients that were performed in such a manner as to prompt an investigation into his conduct and affairs by the Idaho Attorney General.  *Id.* at ¶¶ 6–7.  Pursuant to a voluntary agreement to settle the resulting claims of improper conduct brought by the Attorney General, Defendant personally agreed to pay $80,000 in restitution, plus a $25 service fee, to the Attorney General's Office.  Defendant used funds from Chemical's bank

---

[3] Mr. Klein is the plan administrator in both Chemical's bankruptcy case as well as in Peirsol's individual case and is the Plaintiff in both adversaries discussed here.  As such, the Court will refer to Mr. Klein as "Plaintiff."

MEMORANDUM OF DECISION–9

account, rather than his own funds, to pay that obligation. *Id.* at ¶¶ 8–11. The complaint alleged that Chemical received no reasonably equivalent value for the transfer of its money; that the transfer was made with the intent to hinder, delay, or defraud Chemical's creditors; that it was made while Chemical was insolvent; and that, therefore, it was a fraudulent transfer avoidable and recoverable by Plaintiff exercising the powers granted to him by the Code and the confirmed plan under §§ 548(a) and 550. *Id.* at ¶¶ 12–14; 20–21. After Chemical filed for bankruptcy protection, Plaintiff recovered $20,000 from the Attorney General's Office for the benefit of Chemical's creditors. *Id.* at ¶¶ 17–18.

The Chemical Adv. complaint further alleged that Chemical sold certain of its assets to Jeffery Simcox and Karen Adams, who signed a promissory note in which they agreed to pay Chemical $210,000 plus interest in installments. *Id.* at ¶¶ 23–26. When Simcox and Adams stopped making the installment payments, Chemical pursued a state court lawsuit against them, which was concluded when the parties eventually settled. *Id.* at ¶¶ 27–29. Pursuant to the settlement, in a deal negotiated and implemented by Defendant for Chemical, Simcox agreed, *inter alia*, to pay "J & J Chemical or Jon Peirsol" the sum of $20,000 within 30 days of the May 2016 settlement agreement. Peirsol Depo. at p. 44; Chemical

MEMORANDUM OF DECISION–10

Adv. complaint, Dkt. No. 1 at ¶ 23.  The settlement check, when tendered, was

payable to Jon Peirsol.  Peirsol Depo. at pp. 45–47.  The settlement further

provided that Simcox would pay the sum of $45,000 in monthly installments of

$1,000 each to Peirsol.  Peirsol Depo. at pp. 47–48.  A new note intended to

substitute for the original note between Simcox and Chemical was executed to

this effect.  Chemical Adv. Dkt. No. 1 at ¶¶ 30–35.  In this way, the payments for

the sale of Chemical's assets were effectively diverted from Chemical to

Defendant.  The Chemical Adv. complaint alleged Chemical received no

reasonably equivalent value in exchange for these transfers, and that they were

made with intent to hinder, delay, or defraud Chemical's creditors while that

entity was insolvent, and constituted a fraudulent transfer.  *Id.* at ¶¶ 36–37; 41–

42.

Next, the Chemical Adv. complaint alleged that Defendant made a

number of cash withdrawals from the business accounts, totaling $115,503.02, for

which Chemical received no reasonably equivalent value, and which were made

with the intent to hinder, delay, or defraud Chemical's creditors while Chemical

was insolvent, constituting fraudulent transfers.  *Id.* at ¶¶ 44–47; 50–51.  In

addition, the complaint averred that $2,500 was withdrawn by Defendant from

MEMORANDUM OF DECISION–11

Chemical's bank account to reimburse Defendant for, he alleged, the purchase of computers for the company; Plaintiff asserted there was no evidence the purchase of such computers had actually occurred. *Id.* at ¶¶ 48–50. Plaintiff further alleged that Defendant received an unauthorized $30 transfer from Chemical after the entity filed its bankruptcy petition. *Id.* at ¶¶ 58–59.

Additionally, Plaintiff alleged that Chemical transferred various other funds from its accounts to Defendant's personal checking and savings accounts, totaling $39,680.97. *Id.* at ¶¶ 61–63. He alleged Chemical transferred the funds with the intent to hinder, delay, or defraud its creditors, that Chemical received less than reasonably equivalent value for the transfers, and that they were made when Chemical was insolvent, and that the transfers were fraudulent. *Id.* at ¶¶ 64–70.

Next, Plaintiff alleged that Defendant had tortiously interfered with Chemical's contracts with its customers on a number of occasions, which resulted in damages to Chemical. *Id.* at ¶¶ 72–85. Finally, Plaintiff alleged in the Chemical Adv. complaint that Defendant breached his fiduciary duty as an officer and owner of the company by paying his personal expenses with Chemical's funds, totaling $277,760.62. *Id.* at ¶¶ 87–91.

MEMORANDUM OF DECISION–12

Defendant retained counsel to represent him in the adversary proceeding who responded to discovery requests and participated in court hearings, but who did not file an answer to the complaint.  Plaintiff eventually moved for entry of default on all but the tortious interference claims.  Chemical Adv. Dkt. No. 25.  Following a March 5, 2019 evidentiary prove-up hearing at which Defendant did not appear, the Court entered its oral findings of fact and conclusions of law, and granted judgment in favor of the Plaintiff.  At that time, the Court specifically found and concluded that Plaintiff's proffered evidence proved the allegations raised in the complaint by a preponderance of the evidence and that Plaintiff was entitled to all the relief sought in the complaint except that requested in Count V—the tortious interference claim—which was dismissed.

On March 8, 2019, the Court entered an order granting Plaintiff's motion for default and dismissing the tortious interference claim, and that same day, entered a default judgment ("Judgment") in favor of Plaintiff and against Defendant.  Chemical Adv. Dkt. Nos. 25, 30, 32, 33.  The combined amount awarded to Plaintiff in the Judgment was $631,415.78, comprised of $514,526.61 in damages, plus prejudgment interest accruing at 12%, totaling $116,889.17.  *Id.*

MEMORANDUM OF DECISION–13

at Dkt. No. 33; Klein Aff. at ¶ 5 and Ex. A.  As itemized in the Judgment, the

combined total of all fraudulent transfers orchestrated by Defendant either to

him, or for his benefit, totaled $236,735.99.  This amount excludes $277,760.62

attributable to the personal expenses Chemical paid to third parties on

Defendant's behalf under a breach of fiduciary duty theory, as well as the $30

transferred post-petition.  As calculated by Plaintiff, the proportional amount of

pre-judgment interest due on that amount was $43,825.12.  Klein Aff. at ¶ 11.

While the parties agree that some payments have been made, Defendant still

owes more than $280,561.11 on the Judgment.  *Id*. at ¶ 12.

On August 16, 2019, Defendant filed an individual chapter 11 bankruptcy

petition.  *In re Peirsol*, 19-40782-JDP at Dkt. No. 1; Klein Aff. at ¶ 6.  The case was

later converted to chapter 7.  19-40782-JDP at Dkt. No. 97.  Defendant listed the

debt represented by the Judgment in favor of Chemical for $681,000 in his

schedules.  *Id.* at Dkt. Nos. 1; 101.  Chemical also filed a proof of claim in the case.

*Id.* at Claims Reg. 8-1.

Plaintiff then commenced the adversary proceeding before the Court

today, *Klein v. Peirsol (In re Peirsol)*, 20-8060-JDP ("Peirsol Adv.").  Plaintiff's

claims in the Peirsol Adv. are founded upon the same transactions as those

MEMORANDUM OF DECISION–14

described in the Chemical Adv. including the payment to the Attorney General,

the Simcox promissory note, the cash withdrawals by Defendant from

Chemical's bank accounts, the transfers from Chemical's accounts to Defendant's

depository accounts, and finally the fraudulent transfers to others to pay

Defendant's personal expenses.  *Id.* at Dkt. No. 1.  In Count I of the Peirsol Adv.

complaint, Plaintiff alleges the facts as established in the Chemical Adv. satisfy

§ 523(a)(2)(A) and render the debt represented by the Judgment in Plaintiff's

favor excepted from discharge in Defendant's personal bankruptcy case.

Plaintiff now moves for partial summary judgment concerning this portion of the

Judgment debt.[4]  More particularly, Plaintiff seeks to have $280,561.11 excepted

from discharge pursuant to § 523(a)(2)(A).

C.  Analysis

   *1.  The Husky Standard for Exceptions to Discharge for Fraudulent Transfers*

   A chapter 7 bankruptcy provides relief to individual debtors, in part, via a

broad discharge of indebtedness.  § 727(b).  However, in designing that relief,

---

[4] It appears Plaintiff seeks a partial summary judgment for only some of the relief sought in
Court I; he does not include the transfers made by Chemical directly to Defendant's personal
creditors in his motion.  Count II, which alleges that Plaintiff's proof of claim is
nondischargeable pursuant to § 523(a)(4) for breach of fiduciary duties is also not addressed in
the motion before the Court.

MEMORANDUM OF DECISION–15

Congress determined that certain types of debts should be excepted from

discharge.  *See, e.g.,* § 523(a).  And Congress has instructed that, for some types of

debt, an exception to discharge is not to be automatic or assumed, but will only

be effective when ordered by the bankruptcy court at the request of a party.

§ 523(c)(1).  In general, the courts construe exceptions to discharge strictly against

the creditor and in favor of the debtor.  *United States v. Tucker (In re Tucker)*, 539

B.R. 861, 865 (Bankr. D. Idaho 2015) (citing *Spokane Ry. Credit Union v. Endicott (In*

*re Endicott),* 254 B.R. 471, 475 n.5, 00.4 I.B.C.R. 199, 200 (Bankr. D. Idaho 2000)

(citing *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992))).  Moreover,

while providing a financial fresh start is a central purpose of bankruptcy, it is

intended to benefit only the honest but unfortunate debtor, and "a dishonest

debtor, on the other hand, will not benefit from his wrongdoing."  *In re Mowery*,

591 B.R. at 5 (quoting *Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir. 1996)

(citing *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S. Ct. 654, 112 L. Ed. 2d 755

(1991))).

In furtherance of this objective, the Code provides that a debt for money

obtained by the debtor under "false pretenses, a false representation, or actual

fraud" may be excepted from discharge.  § 523(a)(2)(A).  Bankruptcy courts

MEMORANDUM OF DECISION–16

litigate fraud-based exceptions to discharge frequently and there are established standards of proof required in these cases.[5]  However, when there is an allegation that the debtor perpetrated a fraudulent transfer of money or property under the Bankruptcy Code, the applicable standard is less clear.  To resolve this, the parties' briefing focuses on the United States Supreme Court's decision in *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016).

The *Husky* decision is based upon similar facts to those presented here. Husky supplied components for electronic devices and sold its products to customer Chrysalis Manufacturing on credit.  At that time, the manager of Chrysalis was Daniel Lee Ritz, Jr.  Husky alleged that, while the Chrysalis debt to Huskey remained unpaid, Ritz transferred large sums of Husky's funds to entities Ritz controlled.  Based on this conduct, Husky sued Ritz seeking to hold him personally responsible for the Chrysalis debt, prompting Ritz to file a chapter 7 bankruptcy petition.  Husky commenced an adversary proceeding in

---

[5] Typically, to establish that a debt is nondischargeable for fraud under § 523(a)(2)(A), a creditor must prove five elements by a preponderance of the evidence: (1) misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886–87 (9th Cir. BAP 2014); *In re Mowery*, 591 B.R. at 6.

MEMORANDUM OF DECISION–17

the bankruptcy court to hold Ritz personally liable for the Chrysalis debt and to declare the debt excepted from discharge under § 523(a)(2)(A) based upon Ritz's alleged fraudulent transfers of Chrysalis funds.

The bankruptcy court, and then on appeal, the district court and the Fifth Circuit, all concluded that, while Ritz should be personally liable for the Husky debt, the requirements for a discharge exception under § 523(a)(2)(A) were not met because Ritz did not commit "actual fraud," in part because Ritz made no misrepresentations to Husky. *Id.* at 1585–86. The Fifth Circuit explained that, although Ritz had indeed transferred Chrysalis funds to other entities he controlled to evade its creditors, including Husky, Ritz had not made any misrepresentations to Husky in doing so. *Id.* at 1586. On appeal, the Supreme Court reversed, holding that the term "actual fraud" in § 523(a)(2)(A) of the Code was sufficiently broad to encompass "fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Id.* at 1590. It further observed that, for purposes of § 523(a)(2)(A), "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* at 1586.

Before the Supreme Court, Ritz contended that although § 523(a)(2)(A) excepts from discharge debts "for money [or] property … to the extent *obtained*

MEMORANDUM OF DECISION–18

by … actual fraud," the mere receipt of such funds does not fall within the ambit of funds "obtained by" fraud. (emphasis added). The Supreme Court rejected this argument observing that,

> the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargable under § 523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

*Id.* at 1589 (internal citations omitted).[6]  *See also Sauer Inc. v. Lawson (In re Lawson)*, 791 F.3d 214, 222 (1st Cir. 2015) ("We hold that the fraud exception to discharge codified at § 523(a)(2)(A) continues to bar from discharge debts incurred through knowing and intentional receipt of fraudulent conveyances as it has since 1867."); *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (holding same).

   *Husky* is important in this action because the Court explained that a fraudulent transfer may indeed supply the factual basis for a finding in the bankruptcy court of "actual fraud" under § 523(a)(2)(A) even if there is no

---

[6] This statement is likely *dicta*, as the Supreme Court left it to the Fifth Circuit on remand to determine whether the debt to Husky was "obtained by" Ritz's asset transfer scheme. *Id.* at n.3.

MEMORANDUM OF DECISION–19

evidence that the debtor made a misrepresentation to the injured creditor.

Moreover, the Court instructed, albeit in *dicta*, that the beneficiary or recipient of

the fraudulent transfer—such as Defendant here—may be found to have

engaged in actual fraud if the subject debts are traceable to the fraudulent

transfer, and if the recipient has the "requisite intent."  If that recipient files for

bankruptcy relief, as Defendant did here, then those fraudulent debts may be

nondischargeable under § 523(a)(2)(A).

   While the Supreme Court remanded the action to the trial court and did

not decide whether Ritz had in fact "obtained" the Husky debt for purposes of

dischargeability, the decision did provide a standard to be used by courts to

decide such questions.  And after *Husky* was decided, several other courts have

examined this issue and articulated applicable standards.  For example, last year,

the Ninth Circuit Bankruptcy Appellate Panel examined this issue in light of

*Husky* in *Bonnett v. Moirbia Scottsdale, LLC (In re Bonnett)*, 2020 WL 4371881, at *4

(9th Cir. BAP July 30, 2020), *aff'd*, 2021 WL 3404220 (9th Cir. Aug. 4, 2021).  In that

case, the state court had determined that Bonnett was liable to Moirbia for

making actual fraudulent transfers under Arizona's fraudulent transfer statute.

*Id.* at *2.  Following an unsuccessful appeal of that decision in state court, Bonnett

MEMORANDUM OF DECISION–20

filed a bankruptcy petition, and Moirbia commenced an adversary proceeding

under § 523(a)(2)(A) seeking to have its debt deemed nondischargeable.  Moirbia

moved for summary judgment on the grounds that under principles of issue

preclusion, Bonnett's fraudulent intent had been determined in the state court

action.  Relevant here, after considering *Husky*, the BAP articulated the standard

to employ in making such a determination:

> While the Supreme Court in *Husky* did not set forth what elements a
> creditor must prove for a claim under § 523(a)(2)(A) involving a
> fraudulent conveyance scheme, we agree that to succeed on a claim
> against the debtor-recipient the creditor must prove:
>
>> 1) the transferor conveyed the property with the intent
>> to hinder or delay his creditors; and 2) the transferee
>> was a participant in the fraud, such that it could be said
>> that the debtor engaged in "deceit, artifice, trick, or
>> design involving direct and active operation of the
>> mind, used to circumvent and cheat another.

*Id.* at *4–5 (quoting *Fisher v. Quay (In re Quay)*, Adv. No. 04-6065, 2005 WL

6488242, at *9 (Bankr. N.D. Ga. Mar. 29, 2005) (citing *McClellan*, 217 F.3d at 893));

*see also Lariat Cos, Inc. v. Wigley (In re Wigley)*, 620 B.R. 87, 91 (8th Cir. BAP 2020)

(citing to *Bonnett* and adding a damage element, the 8th Cir. BAP requires three

elements: "(1) the transferor transferred assets with the actual intent to hinder,

delay, or defraud the transferor's creditors; (2) in receiving the assets, the

MEMORANDUM OF DECISION–21

transferee possessed actual fraudulent intent; and (3) as a result of these actions, the creditor was injured or suffered damages.") *Bonnett* was appealed, and in its decision affirming the BAP, the Ninth Circuit stated that, under *Husky*, "[a] transferee who receives a fraudulent conveyance with the requisite wrongful intent also commits actual fraud, and any debts traceable to the fraudulent conveyance will be nondischargeable. *Bonnett v. Moirbia Scottsdale, LLC,* 2021 WL 3404220, at *2 (9th Cir. Aug. 4, 2021).

    2. *Issue Preclusion in Discharge Litigation*

    Here, Plaintiff has a money judgment against Defendant based, in part, upon his actions in making actual fraudulent transfers to himself and others. Applying the precedents, the Court concludes that, in this context, for Plaintiff's judgment debt to be excepted from discharge for actual fraud under § 523(a)(2)(A) based on issue preclusion, the court, in granting the judgment, must have determined in that litigation that the defendant/recipient or beneficiary of the transfers found to constitute actual fraud acted with the requisite fraudulent intent in connection with such transfers. *See Bonnett,* 2020 WL 4371881, at *5. As applied here, the Court will therefore examine whether, as a matter of undisputed fact, that 1) Plaintiff's default judgment against

MEMORANDUM OF DECISION–22

Defendant satisfied the requirement of actual fraud, 2) Defendant was the

recipient or beneficiary of the fraudulent transfers, and if so, 3) he had fraudulent

intent in receiving those transfers.  Plaintiff bears the burden of proof on each of

these elements. *See* Rule 4005.

Before the Court embarks upon that discussion, however, it must first

weigh whether the Plaintiff's Judgment against Defendant, and the facts found

related to it, are entitled to preclusive effect in this adversary proceeding.

Issue preclusion serves to protect litigants from multiple lawsuits, conserve

judicial resources, and encourage reliance on adjudication by reducing the

likelihood of inconsistent judgments.  *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct.

411, 66 L. Ed. 2d 308 (1980).  The doctrine precludes a party from revisiting an

issue actually litigated and lost in a prior proceeding.  *Resolution Tr. Corp. v.

Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999); *Roussos v. Michaelides (In re

Roussos)*, 251 B.R. 86, 92 (9th Cir. BAP 2000); *Krystal v. Haynie (In re Haynie)*, 621

B.R. 456, 464 (Bankr. D. Idaho 2020), *aff'd*, 624 B.R. 872 (9th Cir. BAP 2021).  A

bankruptcy court may apply the doctrine to an existing judgment as the basis for

granting summary judgment in an action.  *See Khaligh*, 338 B.R. at 832.  Finally,

issue preclusion has been held to apply in § 523(a) dischargeability proceedings.

MEMORANDUM OF DECISION–23

*Grogan*, 498 U.S. at 284 n.11, 111 S. Ct. at 658 n.11; *Cal–Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003); *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007).

In determining whether a judgment should be given preclusive effect, the Court applies the preclusion law of the forum issuing the prior judgment. Here, because the bankruptcy court entered the Judgment, this Court will apply federal preclusion law. *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.") (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–508, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001)); *Berr v. Fed. Deposit Ins. Co. (In re Berr)*, 172 B.R. 299, 305–06 (9th Cir. BAP 1994).

Under the federal standard, to foreclose relitigation of an issue using issue prelusion, the Court must decide if:

> (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

*Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (internal citations omitted); *Resolution Tr. Corp.*, 186 F.3d at 1114. However, issue

MEMORANDUM OF DECISION–24

preclusion will not be applied where the determination of an issue was "merely incidental to the judgment in the prior action." *Mertens v. Shensky*, No. CV05-147-N-EJL, 2006 WL 173651, at *5 n.2 (D. Idaho Jan. 23, 2006) (quoting *Resolution Tr. Corp.*, 186 F.3d at 1115).

### 3. *Issue Preclusion Analysis*

#### a.  The Prior Judgment

On this record, it is undisputed that on January 19, 2017, Chemical filed a chapter 11 bankruptcy petition, and that Plaintiff, as the administrator of the confirmed plan, commenced adversary proceedings in that bankruptcy case, including the Chemical Adv.  The complaint in that action alleged that transfers were made by Chemical of its funds either directly to Defendant as recipient, or to others for the financial benefit of Defendant.  The complaint further alleged that those transfers were made by Chemical with the intent to hinder, delay, or defraud its creditors, and for which Chemical did not receive reasonably equivalent value in return.  As a result, it was alleged the transfers qualified as avoidable fraudulent transfers pursuant to § 548(a).

In total, Plaintiff's complaint in the Chemical Adv. case alleged that it made $262,738.99 in fraudulent transfers.  While Defendant participated in some

MEMORANDUM OF DECISION–25

proceedings, he did not file an answer to the complaint, and Plaintiff moved for

entry of default judgment.  The Court conducted an evidentiary prove-up

hearing at which Defendant did not appear.  Plaintiff introduced numerous

exhibits at the hearing detailing the transfers and identifying the recipients.  At

the conclusion of the hearing, the Court orally entered findings of fact and

conclusions of law on the record, and granted the motion for default, a result

subsequently formalized in a written order.  Based upon its findings, conclusions

and order, the amount of the Judgment awarded to Plaintiff against Defendant,

was $631,415.78, which included prejudgment interest of $116,889.17.  The

amount of the Judgment based on the fraudulent transfers to Defendant was

$236,735.99, and the proportional amount of the pre-judgment interest due on

that amount was $43,825.12.  While some payments have been made, Defendant

still owes Plaintiff more than $280,561.11 on the Judgment.

### b.  Identity of Issues and Opportunity to Litigate

The first required element for issue preclusion is that the issue decided in

the prior action be the same as that now before the Court.  There are four

questions that assist the Court in making this determination:

> (1) Is there a substantial overlap between the evidence or argument
> to be advanced in the second proceeding and that advanced in the

MEMORANDUM OF DECISION–26

first?  (2) Does the new evidence or argument involve the
application of the same rule of law as that involved in the prior
proceeding?  (3) Could pretrial preparation and discovery related to
the matter presented in the first action reasonably be expected to
have embraced the matter sought to be presented in the second?  (4)
How closely related are the claims involved in the two proceedings?

*Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 828–29 (9th Cir. 2018) (citing *Howard v.
City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017)).  These factors "are not
applied mechanistically." *Howard*, 871 F.3d at 1041.  Moreover, issue preclusion
may apply "even if the issue recurs in the context of a different claim." *Howard*,
871 F.3d at 1040–41 (quoting *Taylor*, 553 U.S. at 892).  Finally, the issues need only
be the same "in substance."  *Richey v. United States Internal Rev. Serv.*, 9 F.3d 1407,
1410 (9th Cir. 1993).

Plaintiff seeks to establish the facts necessary to prove the allegations
raised in the current complaint via the preclusive effect of those established via
the prior Judgment.  Thus, as explained in *Husky*, the three facts the Court is
must identify from the prior case are:  1) whether a finding of actual fraud was
made; 2) whether Defendant was the recipient of the subject fraudulent transfers;

MEMORANDUM OF DECISION–27

and if so, 3) whether Defendant had the requisite fraudulent intent in receiving those transfers.[7]

### i. Identity of Issues – Actual Fraud

Turning to the first issue, Plaintiff seeks to have the debt represented by the Judgment excepted from discharge in Defendant's bankruptcy case because it is grounded in his actual fraud. The Court concludes that there is a substantial overlap between the evidence or argument to be advanced in this proceeding concerning whether Defendant engaged in fraud and that produced in the first action. The same proof regarding each of the fraudulent transfers included in the Judgment would surely be relevant and necessary in a trial of this proceeding. Moreover, a trial would involve the application of the same rule of law as that involved in the prior proceeding, while the focus would shift from Chemical as the transferor to Defendant as the transferee. Furthermore, pretrial preparation

---

[7] The complaint in the Chemical Adv. alleged numerous fraudulent transfers pursuant to both §§ 548(a)(1)(A) and (B). Those statutes differ in that § 548(a)(1)(A) alleges transfers made with "actual intent to hinder, delay, or defraud," while subsection (B) alleges constructive fraud and thus does not include a required showing of intent. *See Hopkins v. Crystal 2G Ranch, Inc. (In re Crystal)*, 513 B.R. 413, 417–18 (Bankr. D. Idaho 2014); §§ 548(a)(1)(A) and (B). Thus, in the Chemical Adv. proceeding, only the facts and proof used to establish fraudulent transfers under § 548(a)(1)(A), which requires actual intent to hinder, delay, or defraud on the part of the transferor, will be of use here. As such, the proof of Chemical's insolvency and whether it received reasonably equivalent value in exchange, which is necessary to support the Judgment under § 548(a)(1)(B), will not be considered here.

MEMORANDUM OF DECISION–28

and discovery related to the matters presented in the first action would be

reasonably expected to have embraced the allegations raised in the present

complaint.  Finally, the Court finds and concludes that the claims involved in the

two adversary proceedings are very closely related.  Again, while the focus shifts

from Chemical, as the transferor in the first action, to Defendant as the recipient

or beneficiary of the transfers in this action, the factual basis of for the allegations

in the two complaints is the same.  The Court therefore concludes that, with

respect to the allegations that Defendant participated in an actual fraud in

connection with the transfers, there is a sufficient identity of issues for purposes

of issue preclusion.

### ii.  Identify of Issues – Recipient of Transfers

The same can be said for the second issue in the case at bar—whether

Defendant was the recipient of the transfers.  The proof lodged in support of the

fraudulent transfers at the default prove-up hearing involved tracing those

transfers from Chemical's accounts to various recipients.  While the focus was

not specifically on the particular recipient of each the transfers, there would be

substantial overlap between the evidence necessary to establish this fact in this

proceeding with that produced in the first.  The Court also concludes that the

MEMORANDUM OF DECISION–29

allegations in this complaint involve the application of the same rule of law as

that involved in the prior proceeding—indeed, they are different sides of the

same coin.  Likewise, the pretrial preparation and discovery would be virtually

the same as between the Chemical Adv. and the case currently before the Court

as to who received the transfers.  Finally, the Court finds the claims in the two

proceedings are very closely related, with the only real difference in the

consequences assigned by the Bankruptcy Code to the same fraudulent transfers.

*iii.  Identity of Issues – Defendant's Intent*

Whether there exists an identity of issues regarding Defendant's alleged

fraudulent intent in orchestrating Chemical's transfers is a closer question.  The

issue in the Chemical Adv. case focused upon Chemical's fraudulent intent in

transferring funds out of the corporation prior to its bankruptcy filing, the

question of Defendant's intent in receiving those funds, or the benefit of the

transfers, was not explored in depth.  Defendant, technically, did not make the

Chemical transfers.  But he was the business entity's president and managing

officer.  In a real sense, then, while Chemical was the "transferor" in the prior

action, Defendant was both the architect of the transfers, and was either the

recipient or ultimate beneficiary of the transactions.

MEMORANDUM OF DECISION–30

In an issue preclusion analysis, the Court finds there would be a substantial overlap between the evidence to be advanced in this proceeding and that presented in the Chemical Adv. prove-up hearing. Because admissions of actual fraud are rarely present, Plaintiff relied on badges of fraud to circumstantially demonstrate that Defendant's fraudulent intent motivated Chemical's conduct and actions. Likely, the same proof would be presented to this Court to demonstrate that Defendant had fraudulent intent as the recipient of Chemical's fraudulent transfers. In addition, the Court would apply the same rule of law as that involved in the prior proceeding, with a focus on the receiving end of the transfers. Moreover, pretrial preparation and discovery related to the matter would be virtually the same as between the two cases. Finally, the Court finds the claims are sufficiently closely related to satisfy the requirements of issue preclusion. Recall, the issues may be identical even if they occur in the context of different claims, and they need only be the same in substance.

### iv. Defendant's Opportunity to Litigate Prior Case

The Court next considers whether, for federal preclusion purposes, Defendant had an opportunity to litigate the prior action. This element is separate from the "actually litigated" requirement discussed below. *Janjua v.*

MEMORANDUM OF DECISION–31

*Neufeld*, 933 F.3d 1061, 1067 (9th Cir. 2019) ("our precedent clearly lays out 'actually litigated' and a 'full and fair opportunity' to litigate as separate requirements, each of which must be met for issue preclusion to apply.")

In the Chemical Adv. proceeding, Defendant was the only named defendant in that action.  He was duly served with the complaint, he was served with and answered discovery requests, and he retained counsel who represented him in the proceeding.  However, he never filed an answer.  He was given notice of the prove-up hearing, and apparently opted not to participate at that hearing. After the prove-up hearing, Defendant participated in the litigation by responding to Plaintiff's contempt and sanctions motion aimed at collecting the Judgment.  Accordingly, the Court finds that Defendant had an opportunity to litigate in the prior action which led to entry of the Judgment.  It appears he simply chose not to do so.

### c.  Actually Litigated and Necessary to the Judgment

While the others are satisfied, this prong of the issue preclusion requirements presents a problem for Plaintiff.

For a judgment to be given preclusive effect, the issues raised must have been "actually litigated" and necessary to the judgment.  *Resolution Tr. Corp.*, 186

F.3d at 1114.  An issue is "actually litigated" for purposes of issue preclusion if
the issues were "actually and necessarily determined," in other words, issues
"that were raised, contested, submitted for determination, and determined."
*Janjua*, 933 F.3d at 1067.  As such, the record in the prior proceeding must show
an express finding upon the allegation for which preclusion is sought.  However,
"the express finding requirement can be waived if the court in the prior
proceeding necessarily decided the issue."  *Cantrell,* 329 F.3d at 1124.  "In such
circumstances, an express finding is not required because if an issue was
necessarily decided in a prior proceeding, it was actually litigated."  *Id.* (internal
citations omitted).

    While default judgments often fail this part of the analysis, the Court in the
prior action conducted an evidentiary "prove-up" hearing concerning the
allegations of the complaint prior to issuing the Judgment.  At this hearing,
Plaintiff's counsel submitted 50 documentary exhibits, meticulously explaining
the relevance and import of each one, tracing funds through various bank
accounts, and demonstrating how they supported the allegations in the
complaint claiming that Chemical had engaged in a fraudulent scheme to divert
funds from Chemical to Defendant for his personal benefit.  The Court had the

MEMORANDUM OF DECISION–33

opportunity to ask questions, which Plaintiff's counsel answered, generally by reference to the evidence. Thus, the Court finds the allegations raised in the Chemical Adv. complaint were actually litigated.

It is the second part of the analysis where Plaintiff's argument stumbles. The Court made no express finding that Defendant was the recipient of Chemical's fraudulent transfers, nor that he exhibited fraudulent intent in receiving the transfers. The lack of such an express finding can be overcome, however, if the finding was necessary to support the Judgment. But whether a transfer qualifies for avoidance as a "fraudulent transfer" pursuant to § 548(a) is not dependent on a specific recipient. Indeed, so long as Plaintiff demonstrated that, in making the transfers, Chemical intended to hinder, delay, or defraud its creditors, the identity of the recipient of the transfers was immaterial. Moreover, the intent of the recipient in accepting those funds is also not a necessary element of proof to establish a fraudulent transfer. As such, the Court cannot find the prior Judgment to be preclusive on those two elements required under § 523(a)(2)(A).

///

///

MEMORANDUM OF DECISION–34

### d.  Issue was Decided in a Final Judgment

The next requirement for issue preclusion is that the issue sought to be given preclusive effect was decided in a final judgment.  At the conclusion of the hearing, the Court specifically found and concluded that the proffered evidence demonstrated by a preponderance of evidence that the Plaintiff was entitled to relief sought in complaint except in Count V which Plaintiff voluntarily dismissed.  The Court noted that it would award a money judgment, and that its oral pronouncement was intended to be its findings of fact and conclusions of law, but otherwise made no specific findings.

However, the text of the Judgment entered by the Court specifically designates each count for which relief is granted, including the ones alleged under § 548(a)(1)(A) which require a showing of intent to hinder, delay, or defraud Chemical's creditors.  As such, the Court concludes that the issue of actual fraud was decided in the prior case.  Moreover, the Judgment was not appealed and is therefore final.

### e.  Party or in Privity

Finally, for issue preclusion to apply, the Court must consider whether the Defendant was a party or in privity with a party in the prior case.  This is because

MEMORANDUM OF DECISION–35

a person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. *Taylor*, 553 U.S. at 892, 128 S. Ct. at 2171. Indeed, it "is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor*, 553 U.S. at 884, 128 S. Ct. at 2166–67 (quoting *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940)).

This requirement is easily decided. The sole defendant named in the Chemical Adv. proceeding was Jonathan Peirsol, the same individual named as the sole Defendant herein. According, this requirement of issue preclusion is met.

In sum, the Court concludes the Judgment is preclusive as to the issue of actual fraud for the purposes of the adversary proceeding before the Court. It is not preclusive, however, on the issues of whether Defendant was the recipient of the fraudulent transfers or his intent in receiving the transfers, as those issues were not necessary to the Judgment.

MEMORANDUM OF DECISION–36

### 4. *Summary Judgment Analysis*

Turning now to the motion, the Court concludes that Plaintiff's motion for partial summary judgment should be granted in part and denied in part. To be granted, there can be no material facts in dispute and Plaintiff must be entitled to judgment as a matter of law. As discussed above, the issue of actual fraud regarding the transfers has been conclusively, and preclusively, determined by the prior Judgment, thus summary judgment may be properly granted on this issue. Whether Defendant had the requisite fraudulent intent in connection with the transfers forming the basis of the damages awarded against him in the Judgment has not been preclusively established.

Moreover, while issue preclusion does not resolve the question of whether Defendant was the recipient of the fraudulent transfers, the Court concludes that summary judgment is nevertheless properly granted on this issue. Not only does Defendant not dispute Plaintiff's assertion that he received those funds transferred from Chemical, but the documentary evidence submitted to the Court for the prove-up hearing in the Chemical Adv. case shows conclusively that Peirsol received the funds transferred from Chemical.

MEMORANDUM OF DECISION–37

For the $80,025 payment to the Attorney General, the evidence

demonstrates that the payment was made from Chemical's account.  *See* Peirsol

Depo. at pp. 33–34 ($80,025 payment to Attorney General made from Chemical's

account); Defendant's Stmt. of Undisputed Facts, Dkt. No. 32 at ¶ 10 (attorney

general payment made from Chemical's account); Chemical Adv. Exs. 118, 119 at

p. 57 (wire transfer authorization and outgoing wire transfer from Chemical's

account in the amount of $80,025).

Regarding the Simcox settlement, the evidence before the Court proves the

funds were received by Peirsol and not Chemical.  *See* Settlement Agreement,

Chemical Adv. at Exs. 123–125 (directing $20,000 payment and installment

payments to be made to Peirsol); Defendant's Stmt. of Undisputed Facts, Dkt.

No. 32 at ¶ 14 ($20,000 payment made on the Simcox settlement was paid to

Peirsol); Peirsol Depo. at pp. 45–46 ($20,000 settlement payment made to Peirsol).

Next, the Court finds the cash withdrawals sufficient to establish that

Defendant also received those funds.  *See* Chemical Adv. Exs. 119; 128–130 (bank

statements and canceled checks); Peirsol Depo. at pp. 50–51 (Peirsol admits he

made cash withdrawals from Chemical's accounts).  Regarding the $2,500

payment for computers, the evidence establishes Defendant received these funds.

MEMORANDUM OF DECISION–38

*See* Chemical Adv. Exs. 132–133 (emails describing the reimbursement of the alleged computer purchase and canceled check); Peirsol Depo. at pp. 51–52 (Peirsol reimbursed $2,500 for computers).

Finally, as to transfers from Chemical's accounts to Peirsol's personal checking and savings accounts, the evidence establishes Peirsol was the recipient of these funds. *See* Peirsol Depo. at pp. 53–54 (transfers from Chemical's accounts to Peirsol's personal accounts); Chemical Adv. Exs. 130, 134–135 (bank statements evidencing transfers from Chemical's accounts to Peirsol's personal accounts).

The Court concludes that Defendant's receipt of the fraudulently transferred funds is established by the facts and is not in dispute, and summary judgment is properly granted on this issue.

But the same cannot be said concerning Defendant's intent in receiving the transfers. The Chemical Adv. proceeding did not explore Defendant's intent in benefitting from these transfers, and Defendant specifically disputes that he had any fraudulent intent as the recipient. Indeed, Defendant asserts his belief that, as president of Chemical at the time of the transfers, his access to Chemical's funds was unfettered and unrestricted, as was his ability to take or retain funds

MEMORANDUM OF DECISION–39

from the corporation.  Given that this fact is material to the § 523(a)(2)(A)

analysis under *Husky*, Plaintiff's motion for partial summary judgment will be

denied on this issue.

## IV.  Conclusion

This Court concludes that issue preclusion applies to the issue of actual

fraud.  Moreover, while preclusion does not apply to the issue of whether

Defendant received the transfers from Chemical, the undisputed evidence before

the Court establishes this fact.  Therefore, Plaintiff's motion for partial summary

judgment will be granted on these two issues.

The Judgment entered in the prior adversary proceeding did not

preclusively decide whether Defendant had fraudulent intent when he received

the transfers from Chemical, and Defendant specifically disputes that fact in this

proceeding.  Accordingly, because this material fact remains in dispute,

Plaintiff's motion for partial summary judgment is denied on this issue.

A separate order will be entered.

DATED: October 13, 2021

Jim D. Pappas
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION–40